## HIRAM CRANDALL & WIFE *v.* HENRY LOOMIS.

*Master and Servant. Nuisance. Presumption.*

D. owned a house in the city of Burlington. The tenant who occupied the house sent to G., a plumber, to repair the drain; and he, after examining it, decided to connect it with the public sewer. D. lived in California; and the defendant, who was her agent only for the purpose of collecting and transmitting the rent, when called upon by G., told him that he would pay the expense for connecting the drain with the sewer, but at the same time expressly informed G. that he took no responsibility in directing the work, and that authority to proceed with it must come from some other source than himself. G. dug a ditch in the street and left it without any guard, and the female plaintiff while travelling at night fell into it and was injured. *Held*, that the defendant was not liable as he was not the promoter of an unlawful act : and that the presumption was, that the defendant contemplated and intended that G., if he concluded to do the work, would obtain lawful authority and direction, both from the owner of the premises, and from the city authorities.

TRESPASS on the case. Heard by the court on the report of a referee, September Term, 1883, TAFT, J., presiding. Judgment for the defendant. The referee found substantially that the wife of L. C. Dodge, in September, 1881, owned a house on the north side of Pearl street in the city of Burlington; that she then resided in California; that the house was occupied by one Hutchinson as a tenant; that the drain to the house became badly out of repair and said Hutchinson sent to John Griffin, a plumber, to make examination of the drain ; that " Griffin being absent, his son Lawrence, then in charge of his father's business, visited the Dodge house, examined the drain, and determined that it was impracticable to repair it, and that the proper remedy to apply was to connect the drain with the public sewer running down Pearl street. Before commencing the work of making such connection, and directly after the interview with the defendant as hereinafter stated, Lawrence Griffin made an application to the city authorities for leave to make the proposed connection, in the

Crandall *v.* Loomis.

name of L. C. Dodge. The city had made ordinances governing such works which were put in evidence." * * * * "The application made by said Lawrence was in fact presented to the board of alderman by the city clerk, and granted Oct. 3 1881."

\*       \*       \*       \*       \*       \*       \*

"In this case the usual custom was followed, the superintendent of streets approved the proposal, work was at once commenced, and the clerk laid the application before the alderman who approved the same as before stated. The superintendent of streets gave Griffin directions where to find the T in the sewer, visited the work while in progress, and directed that a light be put out nights as a warning to travellers; and thereupon, said Lawrence employed laborers on his own account and opened a ditch from a point a little south of the center of said Pearl street to said house."

The referee also reported, that work on the ditch commenced the 23d. of September, and that Griffin on the first night set out a lighted lantern to warn travelers of the obstruction, but on the next night no light was set out for this purpose, although a lantern had been filled and an employe of Griffin had been directed, to light it and place it in the proper position to give notice of the obstruction; and that Mrs. Crandall while traveling in the street fell into the ditch and received the injuries complained.

"The defendant testified, among other things, that Lawrence called upon him and said that he had examined the drain and found it in such shape that he thought it would be better and cheaper to connect it with the sewer, and thereupon, the defendant replied that he would have nothing to say about it, would give no directions about it at all; that Lawrence then inquired, "If you will have nothing to do with it, who will see to the paying of the bill?" that the defendant replied, "Tell your father that if he does the job I will see the bill paid." * * * *
I find the facts to be as testified by the defendant.

The defendant, at this time, had no authority to act for Mrs. Dodge in the matter of making repairs on her premises, and pretended to none. He did act for her in collecting and trans-

Crandall *v.* Loomis.

mitting to her her rents, but further than this did not assume to act." * * * * * * * * *

" While the work was in progress the defendant gave no advice or direction respecting it, and exercised no control over it."

*E. R. Hard*, for the plaintiffs.

*Prima facia* the excavation which caused the injury complained of, was a nuisance; and, independantly of any question of diligence or negligence, every one connected with its construction is responsible to travellers who, without fault on their part, sustained a special injury therefrom.

4 Wait Act. & Def. 772; Whar. Neg. s. 818; Wood Nuis. s. 272; 2 Dill. Mun. Cor. s. 1032; *Ellis* v. *Sheffleld Gas Co.* 2 Ell. & Bl. 767; Shearm. & Red. Neg. s. 363; *Congreve* v. *Smith*, 18 N. Y. 79; *Chicago* v. *Robbins*, 2 Am. Law Reg. 529.

If permission to connect with the sewer had been regularly granted, still the defendant was liable, Wood Nuis. s. 274; 2 Dill. Mun. Cor. s. 660.

The defendant was a voluntary and active and effective participant in causing the excavation to be made; and upon all the authorities, is as responsible, both civilly and criminally, as if he had created it with his own hands.

6 Wait Act. & Def. 48, 54; Cooley Torts, 626; Shearm. & Red. Neg. s. 368; *Pettibone* v. *Burton*, 20 Vt. 302; *Langdon* v. *Bruce*, 27 Vt. 657; 1 Bish. Cr. L. 955.

*Wm. G. Shaw* and *Henry Ballard*, for the defendant.

The relation of master and servant did not exist between the defendant and Griffin. Shearm & Red. Neg. s. 73; Wood Mas. & S. ss. 1, 281; *Pawlet* v. *Rutland & Washington R. R. Co.*, 28 Vt. 297.

The responsibility of the master grows out of, and is measured by, his control over the servant. *Hilliard* v. *Richardson*, 3 Gray, 349; *Harrison* v. *Collins*, 86 Penn. St., 153; *Forsyth* v. *Hooper*, 11 Allen, 419; *Linton* v. *Smith*, 8 Gray, 149;

Wood Mas. & S. s. 76; *Corbin* v. *American Mills*, 27 Conn. 274; *Carter* v. *Berlin Mills*, 58 N. H. 52.

A person who pays for a job of work is not necessarily the master. 6 Hurl. & Nor. 26; *Elder* v. *Bemis*, 2 Met. 599; *Saddler* v. *Henlock*, 4 Ell. & Bl. 570; *Blake* v. *Thirst*, 2 Hurl. & Colt. (Exch.) 20. If there was any contract between the defendant and Griffin, it was to do a lawful act in a lawful way. *Eaton* v. *R. R. Co.*, 59 Me. 520; Wood Mas. & S. 615; *Knight* v. *Fox*, 5 Exch. 721; *Overton* v. *Freeman*, 73 E. C. L. 866; *Peachy* v. *Rowland*, 16 Eng. L. & Eq. 442; *Painter* v. *Mayor of Pittsburgh*, 46 Penn. St. 213; *Allen* v. *Willard*, 57 Penn. St. 347; *Barry* v. *St. Louis*, 17 Mo. 121; *Coomes* v. *Houghton*, 102 Mass. 211; *Clark* v. *Fry*, 8 Ohio St. 358.

The opinion of the court was delivered by

Ross, J. Upon the facts found by the referee, the plaintiffs claim to recover of the defendant only upon the ground that he was, by agreeing to see the bill paid, the promoter of an unlawful act. The digging of a ditch in a public street without the permission of the proper authorities, is a nuisance *per se,*—an unlawful act. All who participate therein by counselling, directing, aiding, or in any way contributing thereto, are liable for the injurious consequences resulting to any one from the commission of such an act. But every ditch dug in a public street or highway is not a nuisance *per se*. The authorities may have occasion to underdrain a portion of such street or highway and for such purpose have occasion to dig ditches therein. Such digging would not be unlawful. One of the uses frequently authorized to be made of streets in villages and cities, is, that of placing public sewers, gas pipes, and acqueducts therein. The city of Burlington had such a sewer in the street on which the plaintiff's wife was injured. The city authorities having lawful authority to construct such a sewer in that street had the right to dig up the street for repairing the same, and for connecting private sewers with it. Having the lawful right to do these things, the proper authorities of the city had the right to license or grant

permits to others to dig up such streets for such purposes. It had by ordinances prescribed the manner in which such licenses or permits should be granted. This was known to the defendant at the time of his interview with Lawrence Griffin, out of which the plaintiffs claim that the defendant's liability arose. One, who had obtained in the manner prescribed, a license or permit to connect a private drain with the public sewer, could lawfully dig up the street for such purpose, and if he did the work in the exercise of proper care and prudence would not be liable for any injurious consequences which might result to a traveller upon such street.

Says Mr. Cooley in his work on Torts, 626, 627 : "If however he has the consent of the proper public authorities, and what he does is consistent with the customary use of the way for private purposes,—as where he is making connections with a public sewer or gas main, and he observes a degree of care proportioned to the danger, and is consequently chargeable with no fault, he cannot be held responsible for accidental injuries inasmuch as in such case he has failed in the observance of no duty." To the same effect is Wood on Nuisances, ss. 274, 275.

Hence, the act in contemplation, and for which the defendant told Lawrence Griffin he would see the bill paid, was capable of being performed in a lawful manner. As found by the referee, the defendant expressly refused to authorize or direct that a private drain should be laid from the Dodge house to connect with the public sewer in Pearl street; but gave Lawrence Griffin to understand, in the language of the referee, "that authority to proceed with the work must come from some other source than the defendant; and that the defendant expressly refused to take any responsibility in directing the work to be done "; and that, " ' Tell your father that if he does the job I will see the bill paid,' was not intended by the defendant, or understood by Lawrence as a request or direction, to do the work, but simply as a promise to see the bill paid, if authority to do the work was obtained outside of the defendant." Assuming, without deciding, that the defendant's promise to see the bill paid, so far connected

him with the act of Griffin in digging up the street, that he would be liable to the plaintiffs if such digging was necessarily unlawful, it cannot be assumed, nor presumed, that the defendent contemplated that Griffin should, or would, dig up the street without having first obtained a license or permit from the proper city authorities, and so commit a nuisance. When an act may be lawful or unlawful, dependent upon whether proper authority for doing the act, is obtained or not, and a man refuses to authorize or direct that it be done at all, but, being of a character highly necessary to be done, says, if done on authority, "I will see the bill paid," it would be extremely harsh, and against all presumptions that universally prevail in regard to innocence, to hold that he intended and contemplated, that no lawful authority for doing the act should first be obtained, and that he thereby became a promoter of an unlawful act, occasioning injury. On the contrary, on these facts, the legal presumption is, that the defendant contemplated and intended, that Griffin, if he concluded to do the work, would obtain proper and lawful authority and direction, both from the owner of the premises and from the proper city authorities ; and that when so done he would see that he was paid for the work.

On this view of the law, as applicable to the facts found by the referee, it is unnecessary to decide whether, what was done by Lawrence Griffin by way of obtaining authority from the city authorities, was so far a compliance with the city ordinances as at that time administered, as would render his interference with the street for the purpose of connecting the drain from the Dodge house with the public sewer, lawful, and the same is left undecided.

Judgment affirmed.